IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2008 MAY -9 P 3: 35

CLERK'S OFFICE
AT BALTIMORE
BY_____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| NORMAN BROWN | * | Crim. No. WMN-90-454 |
| MELVIN FORD | | |
| JEFFREY REID | * | |
| MICHAEL SMITH | | |
| WALTER SMITH | * | |
| PAUL WINESTOCK | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW ON A COURT'S AUTHORITY
TO REDUCE A SENTENCE UNDER 18 U.S.C. § 3582
FOR A DEFENDANT HELD ACCOUNTABLE FOR 4.5
KILOGRAMS OF CRACK COCAINE OR MORE**

*Introduction*

Defendants, through James Wyda, Federal Public Defender for the District of Maryland, and Denise C. Barrett, Assistant Federal Public Defender, hereby submits this memorandum of law to address the Court's authority to reduce the sentence of a defendant held accountable under U.S.S.G. § 2D1.1 for 4.5 kilograms of crack cocaine or more.

The defendants in this case all have been incarcerated for sixteen years or more, following their convictions for various drug trafficking offenses arising from distribution of cocaine base. They seek reductions in their sentences under 18 U.S.C. § 3582 and Amendment 706 to the United States Sentencing Guidelines. Amendment 706 lowered the offense levels for crack offenses that involved at least 500mg of cocaine base and not more than 4.5 kilograms of cocaine base.

Each defendant was convicted of at least one offense that involved at least 500mg of

cocaine base and not more than 4.5 kilograms of crack cocaine. Hence, each should be eligible to seek a reduction under the terms of 18 U.S.C. § 3582 because the guideline for that offense has been lowered. Yet, even though the crack amendments apply to the defendants, the Sentencing Commission has determined that the Court may not reduce the terms of imprisonment imposed on these defendants because the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2).

This case is a startling example of all that was wrong with the *pre-Booker* mandatory guideline regime and the 100-to-1 crack to cocaine powder ratio - young African-American men, many with little or no criminal history, sentenced anywhere from nineteen years to life imprisonment for dealing in crack cocaine. Even though a jury carefully parsed through the evidence in these cases and declined to find the defendants guilty of conspiracy, mandatory guidelines forced the Court to sentence the defendants as if they were all members of the same conspiracy and responsible for all the drug amounts involved in that conspiracy - more than 4.5 kilograms. Mandatory guidelines also forced the Court to sentence them much more harshly because their offenses involved crack rather than cocaine powder. Case law at the time of sentencing also permitted the Court to impose enhanced sentences under 21 U.S.C. §§ 841 and 846 even though the indictment failed to allege drug quantity and the jury made no findings regarding the amount of drugs involved in the offense.

Now years later, the Supreme Court has told us that mandatory guidelines are unconstitutional, *United States v. Booker*, 543 U.S. 220 (2005); that a statutory maximum sentence may not increase with judicial fact-finding, *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and that the crack cocaine guidelines lack sound empirical support and have a

disproportionate impact on African-American drug defendants. *Kimbrough v. United States,*
128 S.Ct. 558 (2007). Yet, these defendants still sit in prison - unable to get relief from *Apprendi*
or *Booker* because those decisions were not made retroactive under the doctrine of *Teague v.
Lane*, 489 U.S. 288 (1989). And now, according to the Sentencing Commission's view of this
Court's authority under 18 U.S.C. § 3582(c), they are unable to obtain relief under the new crack
amendments.

The Sentencing Commission's attempt to preclude relief for these defendants should be
rejected because it rests on a narrow, and incorrect, interpretation of § 3582, conflicts with the
Commission's enabling legislation, and is advisory only under *Booker*. This memorandum
discusses each of these issues in detail, starting with why section 3582 gives this Court authority
to reduce the defendants' sentences, and then discussing why the Court is not bound by U.S.S.G.
§ 1B1.10.

### *Relevant Background and Procedural History*

The defendants were charged in a forty-two count superseding indictment with various
counts of conspiracy to distribute and possess with intent to distribute cocaine base, distribution
of cocaine base, and possession with intent to distribute cocaine base. The indictment alleged no
drug amounts. Only one of the defendants was convicted of conspiracy.

Mr. Brown was convicted of six counts of distribution of cocaine base (Counts 5, 6, 14,
19, 24, 26). At the age of 23, he was sentenced to concurrent life terms. The life terms were
imposed pursuant to 21 U.S.C. 841(b) (50 grams or more of crack cocaine) and the Notice of

3

Enhanced Sentencing filed under 21 U.S.C. § 851.[1]  Now 39 years old, Mr. Brown is housed at FCI Petersburg, Virginia.

Melvin Ford was convicted of one count of distribution of cocaine base.  At the age of 35, he was sentenced to 360 months imprisonment.  That sentence was amended in 1996 to 292 months imprisonment after the Commission lowered the top end of the guideline for drug offenses from 40 to 38.  Now  46 years old , Mr. Ford is housed at FCI Fairton.  His estimated release date is March 2, 2012.

Jeffrey Reid was convicted of two counts of possession with intent to distribute cocaine base.  At the age of 25, he was sentenced to 360 months imprisonment.  On remand from his direct appeal, the Court imposed a sentence of 324 months.  The Court lowered the sentence again to 262 months in 1997 after the Commission lowered the top of the guideline for drug offenses from 40 to 38.  Now 43 years old, Mr. Reid is housed at the low security institution in Coleman, Florida.  His current estimated release date is December 3, 2009.

Michael Smith was convicted of four counts: one count of conspiracy to distribute and

---

[1]    Because the defendants were sentenced before the Supreme Court's decision in *Apprendi*, they were sentenced as if drug quantities that increased the statutory maximum or resulted in a mandatory minimum were "sentencing factors" that could be found by the Court.  It is now clear, however, that the statutory maximum sentences were grossly overstated.  For Mr. Brown, the correct statutory maximum sentence should be **thirty years** because no drug quantity was charged in the indictment.  *United States v. Promise*, 255 F.3d 150 (4th Cir. 2001).  The statutory maximum for the remaining defendants should be **twenty** years.  21 U.S.C. § 841(b)(c).

While *Apprendi* has not been made retroactive in a proceeding under 28 U.S.C. § 2255, once the defendants are eligible for resentencing under 18 U.S.C. § 3582, the re-sentencing would be governed by post-*Apprendi* law.  Under § 3582, the Court must consider the § 3553(a) factors, including the "kinds of sentences available."  18 U.S.C. § 3553(a)(3).  Here, *Apprendi* has limited the kind of sentence available by limiting the statutory maximum penalty.  *See also United States v. Mihm*, 134 F.3d 1353, 1355 (8th Cir. 1998) (court must consider statutory criteria in existence at time of 18 U.S.C. § 3582(c)(2) resentencing).

4

possession with intent to distribute cocaine base and three counts of distribution of cocaine base. At the age of 28, he was sentenced to 324 months. That sentence was reduced to 264 months in 1996. Michael Smith was in a criminal history category I. Now 45 years old, Michael Smith is housed at the federal prison camp in Lewisburg, Pennsylvania. His current estimated release date is June 14, 2011.

Walter Smith was convicted of six counts of distribution of cocaine base. At the age of 31, he was sentenced to 292 months. The sentence was reduced in 1996 to 235 months. Walter Smith was a criminal history category I. Now 43 years old, Walter Smith is housed at the federal prison camp in Allenwood, Pennsylvania. His current estimated release date is March 14, 2009.

Paul Winestock was convicted of one count of distribution of cocaine base and one count of possession with intent to distribute cocaine. At the age of 27, he was sentenced to life imprisonment. The Court reduced the sentence in 1996 to 360 months. Mr. Winestock was in criminal history category I. Now 42 years old, Mr. Winestock is housed at the federal prison camp in Fairton, New Jersey. His current estimated release date is January 22, 2017.

### *Argument*

This Court has authority under 18 U.S.C. § 3582 to reduce the defendants' sentences. While the Sentencing Commission, through U.S.S.G. § 1B1.10, has sought to limit the retroactive application of Amendment 706 to individuals whose final guideline range was not lowered as a result of the amendment, § 3582 does not prohibit this Court from reducing the

defendants' sentence.[2]  First, § 3582 does not precondition this Court's authority to reduce a

sentence on the lowering of the final guideline range for a defendant; second § 1B1.10 conflicts

with other statutory directives, including 28 U.S.C. § 994 and 18 U.S.C. § 3553(a); third, §

1B1.10 is only advisory under *United States v. Booker*, 543 U.S. 220 (2005).

> **I.    This Court has Authority to Reduce a Sentence under 18 U.S.C. § 3582 When the Sentencing Commission Has Lowered a Guideline Upon Which the Defendant's Sentence was "Based" and Then Makes the Amendment Retroactive**.

Section 3582(c)(2) of Title 18 defines the scope of this Court's authority to reduce a

sentence.

That section provides:

> In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant, the director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Here, the requirements of § 3582 are met because the defendants were sentenced to a term

of imprisonment based on a sentencing range for crack cocaine set forth in U.S.S.G § 2D2.1,

which was lowered by the Commission; and a reduction is consistent with the Commission's

policy statement that the amendment is retroactive.

The Commission's position that a defendant sentenced at the highest offense level in

---

[2]  Section 1B1.10(a)(2)(B) states that a reduction is not consistent with the policy statement and authorized under 3582(c), if "an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range."

§ 2D1.1 may not benefit from the retroactive changes in the crack amendments ignores the application instructions set forth in U.S.S.G. § 1B1.1 and rests on a narrow reading of § 3582(c)(2).

Section 3582(c)(2) merely requires that a defendant's guideline range have been "based on" a subsequently amended, retroactively applicable guideline provision. The defendants' terms of imprisonment were "based on" a guideline range that has been lowered, even though the total terms of imprisonment were ultimately determined by a higher guideline range. The defendants' sentences were "based" on a guideline that has been lowered because the multi-step analysis of the guidelines required the Court to consider the offense level applicable to each count of conviction before aggregating those counts, along with relevant conduct, to arrive at a higher guideline range.[3]

A careful analysis of the multi-step process in applying the guidelines shows why the defendants terms of imprisonment were, at some point in the analysis, "based" on a guideline lowered by Amendment 706. Section 1B1.1(a) of the guidelines directs the Court to apply the guidelines in a specific order. Those instructions first require that the Court determine the offense guideline from Chapter Two, pursuant to U.S.S.G § 1B1.2. Section 1B1.2(a) directs that the Court "[determine the offense guideline section in Chapter Two (Offense Conduct) applicable to *the offense of conviction* (i.e., the offense conduct charged in the count of the

_____

[3]  Standard dictionary definitions of "base" include "the bottom of something considered its support," "a supporting or carrying ingredient," and "the starting point or line for an action or undertaking." Merriam-Webster Online Dictionary (2005), http://www.merriam-webster.com. Definitions of "based" are similar – "to make, serve, or serve as a base for." *Id.* So, too, are definitions of "basis." *Id.* ("something on which something else is established or based," "an underlying condition or state of affairs."). *Id.*

7

indictment or information of which the defendant was convicted). Section 1B1.1(b) then directs

the court to § 1B1.3 to determine the applicable guideline range. Section 1B1.3(a) focuses first

on the offense of conviction (all acts caused by defendant and all reasonably foreseeable acts and

omissions of others in furtherance of joint criminal activity "that occurred during the commission

of the *offense of conviction*." Only after ascertaining the conduct underlying the *offense of*

*conviction* does the Court examine "relevant conduct" or conduct that was not part of the offense

of conviction, but part of the "same course of conduct or common scheme or plan as the offense

of conviction." U.S.S.G. § 1B1.3(a)(2).

In these cases, starting from the "offense of conviction" as the guidelines direct, rather

than jumping ahead to "relevant conduct," shows that the Court's sentencing decision for each of

these defendants was "based" on a sentencing range derived from U.S.S.G. § 2D1.1, which has

been lowered as a result of Amendment 706.

**Michael Smith**. Michael Smith was convicted of conspiracy to distribute and possess

with intent to distribute cocaine and cocaine base (Count 4) and distribution of cocaine and

cocaine base, (Counts 7, 8, and 9). Three of the four offenses of conviction involved a quantity

of drugs at a base offense level that has been lowered by Amendment 706. For example, Count 7

involved 13.13 grams of crack. According to the PSR, that Count had a base offense level of 26.

PSR, para. 36. That Count would now have a base offense level of 24, pursuant to Amendment

706. Similarly, Counts 8 and 9 involved drug quantities below 4.5 kilograms of crack (6.892

grams and 7.729 grams, respectively) and carried offense levels of 26 - now lowered to 24. PSR,

para. 36 and 42. Only Count 4 involved over 4.5 kilograms and carried a base offense level of

40. And while the higher offense level in Count 4 trumps the other Counts, that the final

8

sentence was determined by a guideline range that has not been lowered does not mean that the defendant's sentence was not "based" upon a guideline that has been lowered.

**Walter Smith**.  Walter Smith was convicted of six counts of distribution of cocaine base (Counts 17, 21, 23, 27, 28, and 30).  All of the offenses of conviction involved a quantity of drugs at a base offense level that has been lowered by Amendment 706.  Count 17 involved 21.12 grams, PSR, para. 49 (previously a level 28, now 26); Count 21 involved 11.25 grams, PSR, para 55 (previously a level 26, not 22); Count 23 involved 1500 grams, PSR, para. 62 (previously a level 36, not a 34); Count 27 involved 584 grams, PSR, para. 68 (previously a level 38, not a 36); Count 28 involved 584g, PSR, para. 74 (previously a level 38, now a 36); and Count 30 involved 25. 93 grams.  PSR, para. 80 (previously a level 28, now a 26).  The base offense levels for each of these counts standing alone has been lowered by Amendment 706.  It is only through application of the relevant conduct rules in § 1B1.3(a)(2) - a step in the guideline calculation not reached until the Court examines the "offense of conviction" - that the total offense level increases based on a quantity of crack in excess of 4.5 kilograms.

**Paul Winestock, Jr.**  Paul Winestock, Jr. was convicted of one count of distribution of cocaine base (Count 29), and one count of possession with intent to distribute cocaine (Count 33).  One of these counts of conviction, Count 29, involved a quantity to drugs at a level that has been lowered by Amendment 706.  Count 29 involved 53 grams of crack cocaine, PSR, para. 55 (previously a level 32, now 30); Count 33 involved 7 kilograms of powder cooked into crack cocaine.

**Norman Brown, Melvin Ford and Jeffrey Reid.**  Unlike the reports for the Smiths and Paul Winestock, the presentence reports for the remaining three defendants do not expressly state

the applicable guideline for the *offense of conviction*.[4] Those reports jump to the grouping rules in § 3D1.2(d). It appears, however, that any single count of conviction involved less than 4.5 kilograms of crack cocaine. Accordingly, those counts would have been based on a guideline that has been lowered.

In short, this Court's ultimate sentencing decision was inextricably intertwined, and hence "based" on the sentencing range derived from U.S.S.G. § 2D1.1 for each offense of conviction and then readjusted based upon relevant conduct. To un-tether the U.S.S.G. § 2D1.1 range for each offense of conviction would be to ignore the multi-step process required under U.S.S.G. §§ 1B1.1, 1B1.2, and 1B1.3. Simply put, in no case should a court simply jump to "relevant conduct" and bypass the guideline for the offense of conviction.

The Sentencing Commission's view that application of the relevant conduct guidelines, which increase the drug quantity to 4.5 kilograms of crack cocaine or more, means that a defendant's guideline range was not "based on" Chapter Two's drug quantity offense levels for the offense of conviction essentially amends the "based on" clause of § 3582(c)(2) to mean something it plainly does not. Rather than mean that a subsequently lowered guideline was part of the calculation of the defendant's guideline range, the Commission would have the phrase "based on" mean that the amended guideline itself *set* the guideline range. Such a direct cause and effect link is not what the phrase "based on" as used in § 3582(c)(2) requires.

_____

[4] Norman Brown was convicted of distribution of cocaine base (Counts 5, 6, 14, 19, 24, and 26). Melvin Ford was convicted of one count of distribution of cocaine and cocaine base (Count 31). Jeffrey Reid was convicted of possession with intent to distribute cocaine and cocaine base (Count 35).

## II.    Section 1B1.10 Cannot Trump the Language of 18 U.S.C. § 3582.

The Commission's attempt to narrow the meaning of "based on" to "because of" is not binding on this Court. The Commission may not limit or reinterpret the terms of a federal statute. *Stinson v. United States*, 508 U.S. 36, 38 (1993) (Sentencing Commission's commentary explaining or interpreting a guideline is not authoritative if "it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline"); *see also United States v. Hicks*, 472 F.3d 1167, 1170-73 (9th Cir. 2007) (construing § 3582(c)(2) as *not* making the Commission's policy statements mandatory). The purpose of policy statements and commentary is to "assist in the interpretation and application" of the *guidelines*. *Stinson*, 508 U.S. at 45. The clear intent of § 1B1.10, however, is to interpret § 3582(c)(2) - an interpretive act that the Commission cannot do without violating separation of powers principles. *Marbury v. Madison*, 5 U.S. 137 (1803) ("province and duty of the judicial department to say what the law is").

## III.    The Sentencing Commission's Attempt to Limit this Court's Discretion to Reduce a Sentence is Advisory Only.

This Court has authority under 18 U.S.C. § 3582 to reduce a defendant's sentence beyond that set forth in U.S.S.G. § 1B1.10. While the Sentencing Commission has sought to limit reductions under § 1B1.10, that guideline is only advisory under *United States v. Booker*, 543 U.S. 220 (2005). Once the Sentencing Commission changes a guideline upon which the defendant's sentence was "based" and makes the guideline retroactively applicable, a court may reduce the term of imprisonment. The Court's ultimate decision on whether to reduce the sentence and the amount of reduction is governed by 18 U.S.C. § 3553(a), not the guidelines.

*United States v. Booker,* 543 U.S. 220 (2005*); United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007).

An analysis of how *Booker's* tinkering with 18 U.S.C. § 3553(b) affected the weight a court must give the guidelines under 18 U.S.C. § 3553(a)(4) shows how *Booker* altered the application of 18 U.S.C. § 3582(c) - the sentence reduction statute. A similar analysis of the Commission's enabling legislation shows why the Commission's attempt to limit a court's authority to reduce a sentence is contrary to the purposes of sentencing. In addition, post-*Booker* developments in the construction of other sentence reduction provisions, including 18 U.S.C § 3553(e), § 3553(f), and Rule 35(b), show that *Booker* extends to motions to reduce sentence under 18 U.S.C. § 3582(c).

> ### A.     18 U.S.C. § 3582 Must Be Read in Light of *Booker* and *In Pari Materia* With Related Sentencing Provisions. When So Read, § 3582 Gives this Court Authority to Reduce a Sentence Beyond that Contemplated in 1B1.10.

Section 3582(c)(2) of Title 18 defines the scope of this Court's authority to reduce a sentence. That section provides:

> In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant, the director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Section 3582 must be construed in light of existing case law and *in pari materia* with other sentencing provisions that *Booker* fundamentally altered, particularly 18 U.S.C. § 3553(a).

Section 3582 requires that a court consider the § 3553(a) factors in reducing a term of imprisonment. The Commission, through U.S.S.G. § 1B1.10, has sought to severely constrain a court's authority to consider the 3553(a) factors by placing limits on the circumstances under which a reduction is permitted. *See* U.S.S.G. § 1B1.10 (requiring that guideline range "applicable" to defendant have been lowered; seeking to prohibit reduction where amendment "does not have the effect of lowering the defendant's applicable guideline range," limiting reduction to "the minimum of the amended guideline range;" or a comparably lesser reduction from the amended guideline range in cases where the original sentence was lower than the original guideline range). In adopting § 1B1.10, the Commission ignored the Supreme Court's decision in *Booker*. *Booker* marked a sea change in federal sentencing, transforming it into a discretionary system with advisory guidelines. Yet, the Commission chose to treat § 1B1.10 as an unchanged island - the sole survivor of the pre-*Booker* mandatory regime.

The Commission failed to consider how *Booker* fundamentally altered § 3553(a), by excising from the statute § 3553(b), and how that alteration affects the reading of § 3582. A closer look at the language of §§ 3582, 3553 and *Booker* shows why the defendant's reading of § 3582 gives meaning to every word in the statute and preserves Congressional intent while also giving effect to *Booker*.

Section 3582 contains a multi-step analysis. First, the Court must ask if the defendant was "sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission, pursuant to 28 U.S.C. § 994(o)" (giving the Commission authority to revisit guidelines). Second, the Court must ask if a reduction is consistent with applicable policy statements issued by the Sentencing Commission. This question traditionally asked whether the

13

Commission made the amendment retroactive. *See United States v. McHan*, 386 F.3d 620, 622

(4th Cir. 2004 ). If the answer to the first two questions is yes, the door to a sentence reduction is

opened. The Court may then reduce the sentence "after considering the factors set forth in

§ 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c).

It is this last provision that *Booker* fundamentally altered. Before *Booker*, many of the

§ 3553(a) factors were "not applicable" because § 3553(b) made the guidelines - factor

§ 3553(a)(4) - the controlling factor.[5] *Booker*, however, excised § 3553(b) from the statute. 543

U.S. at 223-24. Hence, post-*Booker*, with § 3553(b) excised, all of the § 3553(a) factors are

applicable and the Court is not bound to apply only factor § 3553(a)(4) and follow the guidelines.

*Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007) ("[t]he statute, as modified by *Booker*,

contains an overarching provision instructing district courts to 'impose a sentence sufficient, but

not greater than necessary' to accomplish the goals of sentencing"). Hence, when § 3582 is read

*in pari materia* with the post-*Booker* reconstruction of §§ 3553(b) and 3553(a), the Court must

consider the guidelines as a § 3553(a)(4) factor, but must also consider all of the other § 3553(a)

factors in deciding whether to reduce a sentence and by how much. *Virginia Inter. Inc. v.*

*Edwards*, 398 F.3d 313, 317 (4th Cir. 2005) (neighboring statutory subsections that refer to the

same subject matter "must be read ... as if they were a single statute").

The Court's holding in *Booker* does not preserve § 3582 as the "sole survivor" of the

mandatory guideline regime. When the Court excised § 3553(b)(1), along with 18 U.S.C. §

---

[5] *Booker* explains the interplay of the two provisions as follows: "While subsection a) of § 3553 of the sentencing statute lists the Sentencing Guidelines as one factor to be considered in imposing a sentence, subsection b) directs that the court "shall impose a sentence of the kind, and within the range" established by the Guidelines, subject to departures in specific, limited cases." *Booker*, 543 U.S. at 234.

3742(e), from the statute, it did not carve out exceptions for any provision of the Sentencing Reform Act. The Court unequivocally stated: "So modified, the federal sentencing statute, *see* Sentencing Reform Act of 1984 (Sentencing Act), as amended, **18 U.S.C. § 3551 *et seq.*, 28 U.S.C. § 991 *et seq.*,** makes the Guidelines effectively advisory." 543 U.S. at 245. (emphasis added). 18 U.S.C. § 3582 - part of the "*et seq.*" to § 3551 - and 28 U.S.C. § 994(u) - part of the "*et seq.*" to § 991 - plainly fall within the reach of *Booker's* holding. Hence, in considering the § 3553(a) factors when deciding whether to reduce a sentence, and the extent of a sentence reduction under 18 U.S.C. § 3582, the Court must consider the guidelines, but is not bound by them.

> **B.    28 U.S.C. § 994(u), Which Originally Gave the Commission the Authority to Specify the Amount of a Sentence Reduction, Must be Read in Light of *Booker* and *In Pari Materia* with Other Provisions in the Enabling Legislation.**

The Commission's enabling legislation, which granted it the authority to "specify in what circumstances and by what amount" sentences should be reduced, 28 U.S.C. § 994(u), does not limit this Court's discretion to determine whether to reduce a defendant's sentence and the extent of a sentence reduction.[6] As more fully discussed above, § 994(u) was not exempted from *Booker's* sweeping holding. In addition, the Commission's enabling legislation contains directives that the Commission failed to follow in adopting U.S.S.G. § 1B1.10 and seeking to set limits on reductions under § 3582.

Congress directed that the "Commission . . . consistent with all pertinent provisions of

---

[6] The Commission's enabling legislation is directed to the Commission, not the Court. *See United States v. Sanchez* , 517 F.3d 651 (2d Cir. 2008).

any Federal statute **shall promulgate . . . general policy statements [that] would further the**

**purposes of sentencing set forth in section 3553(a)(2)** . . . including the appropriate use of . . .

the sentence modification provisions set forth in section[] 3582(c)." 28 U.S.C. § 994(a)(2)(C)

(emphasis added).  Section 1B1.10 does not "further the purposes of sentencing set forth in

section 3553(a)(2)."

First, § 1B1.10 cannot be said, for all cases, to "further the purposes of sentencing set

forth in section 3553(a)(2)" because the Commission itself has acknowledged that the crack

amendments, made retroactive through § 1B1.10, are only a "partial remedy" to the crack/cocaine

disparity. *Kimbrough*, 128 S.Ct. at 569 (citing United States Sentencing Commission, Report to

Congress: Cocaine and Federal Sentencing Policy 8 (May 2007)) (available at

http://www.ussc.gov/r_congress/ cocaine2007.pdf).  Thus, even though the Commission itself

has acknowledged that greater reductions in sentence may be in order even to correct the

crack/cocaine disparity, it has sought to limit a court's ability to correct that disparity in cases

involving more than 4.5 kilograms of crack cocaine.

Second, the Commission arbitrarily placed limits on reductions, and the kind of

information a court should consider in deciding to grant a reduction.  The Commission's limits

on a court's ability to further the purposes of sentencing work one way - in favor of the

government.  For example, application note 1(B) expressly seeks to limit the Court's

consideration of many of the § 3553(a)(2) factors through limits and prohibitions placed on the

Court's authority to grant a reduction in the first instance and the extent of any reduction.

Application notes 1(B)(ii) and (iii), allow the Court to consider only "the nature and seriousness

of the danger to any person or the community that may be posed by a reduction in the defendant's

16

term of imprisonment," and "post-sentencing conduct of the defendant that occurred after imposition of the original term of imprisonment." Both of these things, however, can only be considered in determining whether "a reduction is warranted" in the first place and "the extent of such a reduction … within" the amended guideline range.

The application notes leave no room for a court to reduce a sentence even where a defendant's sentence was "based" on a lowered guideline, but where the amendment "does not have the effect of lowering the defendant's applicable guideline range." Nor do the application notes permit a court to give a sentence below the amended guideline range (or less than whatever reduction is comparable to one given at the original sentencing), that "further[s] the [other] purposes of sentencing set forth in section 3553(a)(2)," such as "the need to promote respect for the law," "provide just punishment," or provide the defendant with training, medical care, or treatment "in the most effective manner."

In sum, § 1B1.10 does not accord with the Commission's statutory duties and purpose as set out in 28 U.S.C. § 994(a)(2)(C). Although the Commission has the authority to promulgate policy statements - without consulting experts, without notice and public comment, and without congressional review - that authority must be exercised in accordance with the Commission's statutory duties and the purposes of sentencing. When the Commission fails to properly exercise its authority, as it failed to do in promulgating § 1B1.10, the Court is free to reject it. *United States v. LaBonte*, 520 U.S. 751, 757 (1997) (if guideline commentary "is at odds with" the plain language of § 994, the guideline " must give way").

Considering the guidelines along with all of the other § 3553(a) factors when entertaining a motion for reduction of sentence, but not treating the guidelines as mandatory, "remains

consistent with Congress' initial and basic sentencing intent. . . . [ ] to 'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities ... [and] maintaining sufficient flexibility to permit individualized sentences when warranted.' 28 U.S.C. § 991(b)(1)(B)." *Booker*, 543 U.S. at 264.

C.    ***Booker* Applies to All the Guidelines, Including U.S.S.G. § 1B1.10, Even Though § 1B1.10 is a Sentence Reduction Provision that May Carry No Sixth Amendment Implications.**

*Booker* applies to § 1B1.10 even though it is a sentence reduction provision that may carry no Sixth Amendment implications. *Booker* made clear its applicability to all sentencing decisions, including sentencing reductions. The developing case law and changes in Federal Rule of Criminal Procedure 35(b) demonstrate this common understanding of *Booker*.

*The Guidelines are not One-Way Levers That Remain Mandatory in Some Instances.* *Booker* made clear that the guidelines are now advisory even if they do not implicate the Sixth Amendment. In *Booker*, the government argued that the guidelines could remain mandatory in cases that did not implicate judicial fact-finding to increase a defendant's sentence. The Court expressly rejected that argument.

> [W]e do not see how it is possible to leave the Guidelines as binding in other cases. For one thing, the Government's proposal would impose mandatory Guidelines-type limits upon a judge's ability to reduce sentences, but it would not impose those limits upon a judge's ability to increase sentences. We do not believe that such one-way levers are compatible with Congress' intent. For another, we believe that Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others, given the administrative complexities that such a system would create.[7]

_____

[7] Not applying *Booker* to § 1B1.10 raises some interesting procedural conundrums for appellate jurisdiction. For example, if *Booker* does not apply to § 1B1.10, then neither the

543 U.S. at 266 (internal punctuation marks and citation omitted) (emphasis in original). *See also id. at 248* ("we cannot assume that Congress, if faced with the statute's invalidity in key applications, would have preferred to apply the statute in as many other instances as possible"). *See also Kimbrough*, 128 S.Ct. at 564 ("under *Booke*r, the cocaine Guidelines, *like all other Guidelines*, are advisory only, and that the Court of Appeals erred in holding the crack/powder disparity effectively mandatory").

   *Developing Case law Applies Booker to Sentence Reduction Statutes*.  A finding that § 1B1.10 is advisory would be consistent with other cases that have used the *Booker* rationale to render the guidelines advisory in other contexts involving sentence reductions with no Sixth Amendment implications.  Chief among these cases is *United States v. Hicks*, 472 F.3d 1167, 1172-73 (9th Cir. 2007).  In *Hicks*, the court held that district courts may "depart from the Guidelines when issuing new sentences under § 3582(c)(2)," acknowledging that " 'a mandatory system is no longer an open choice.'" *Id*. at 1170 (citing *Booker v. United States*, 543 U.S. 220, 263 (2005)).  Other courts are in accord in direct holdings and dicta. *See United States v. Forty Estremera*, 498 F.Supp.2d 468, 471-72 (D.P.R. 2007) (proper procedure in a post-*Booker* § 3582(c)(2) resentencing is to first calculate the amended guideline range and then "evaluate the factors set forth in 18 U.S.C. § 3553(a) to determine whether or not a guideline or non-guideline sentence is warranted"); *United States v. Jones*, 2007 WL 2703122 (D. Kan. Sept. 17, 2007) ("section 3582(c) can be invoked to grant the court the authority to resentence using the

_____

government nor the defendant may have an appellate remedy in this case because the appellate review provisions of 18 U.S.C. § 3742(e) have been excised, but not replaced by the standard of review delineated in *Booker*. *See United States v. Legree*, 205 F.3d 724, 727 (4th Cir. 2000) (18 U.S.C. § 3742(a) provides appellate court jurisdiction over appeal of 3582 motion).

guidelines as advisory").

Other cases, construing statutes that permit the sentencing court to go below a statutory mandatory minimum, also find that *Booker* makes the guidelines advisory even if those statutes originally intended to make the guidelines mandatory. For example, in *United States v. Allen*, 450 F.3d 565, 570 n.5 (4th Cir. 2006), the Fourth Circuit construed 18 U.S.C. § 3553(e) - a statute comparable to § 3582. Section 3553(e) permits a court to depart below a mandatory minimum sentence upon a government motion based upon the defendant's substantial assistance. The statute provides in relevant part:

> Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C. § 3553(e). Notwithstanding this mandatory language, and *Booker's* focus on 18 U.S.C. § 3553(a), not § (e), the Fourth Circuit, post-*Booker*, has recognized that a court under § 3553(e) may give full consideration to the § 3553(a) factors and is not bound by the guidelines in imposing a sentence below the mandatory minimum. *See also United States v. Mankins*, 2007 WL 2319817 (D. Md. 2007) (J. Bennett) (reference in § 3553(e) to imposition of sentence "in accordance with the sentencing guidelines necessarily addresses the advisory nature of those guidelines" after *Booker*).[8]

---

[8] Other cases, construing § 3553(e), or the safety-valve provision at 18 U.S.C. § 3553(f) are in accord. *See e.g., United States v. Villa-Lopez,* 2008 WL 168667 (9th Cir. 2008) (unpub.) ("Following *United States v. Booker*, 543 U.S. 220 (2005), when a defendant qualifies for the safety valve, the district court is statutorily required to apply the Guidelines in an advisory manner along with the other factors contained in 18 U.S.C. § 3553(a)); *United States v. Bolano*, 409 F.3d 1045, 1047 (8th Cir. 2005) (same); *United States v. Boyd*, 496 F. Supp. 2d 977, 980 (D. Ark. 2007) (government agreed with defendant "that the Guidelines are advisory in the safety valve setting, just as they are in all other sentencing settings, and that the safety valve provision does not mandate a sentence within the [guidelines] range;" court held that eligible defendant can

All of these cases show that once the gate to a sentence below the mandatory minimum opens upon government motion, a court is free to exercise its discretion in imposing a sentence. It should look to the guidelines for guidance, but is not bound by them.  A similar result should occur here.  Once the gate to a reduced sentence opens upon the Commission's retroactive application of a guideline upon which the defendant's sentence was "based," the Court must consult the guidelines in deciding whether to reduce the sentence, and the extent of any reduction, but is not bound by them.  Once the gate to a reduced sentence opens under § 3582, the Court is bound only by the "overarching provision" in 18 U.S.C. § 3553(a), *i.e.*, that the Court "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 128 S.Ct. at 568-69.

*The Judicial Conference of the United States has Recognized that Booker Applies to Post-Sentencing Proceedings to Reduce a Sentence.*  A finding that § 1B1.10 is advisory would be consistent with current Rule 35(b) - a post-sentencing reduction provision.  The Judicial Conference's Advisory Committee on Criminal Rules acknowledged that *Booker* made the guidelines advisory in the context of a post-sentencing motion for reduction of sentence under Rule 35(b) of the Federal Rules of Criminal Procedure.

The current version of Rule 35 (b), effective December 1, 2007, provides:

> Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.

-------------------

be sentenced below the advisory guideline range that is "sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2)"); *United States v. Cherry*, 366 F. Supp.2d 372, 376 (E.D. Va. 2005) (same).

Fed. R. Crim. P. 35(b)(1).  Before the December 1st amendment, Rule 35(b) provided that the

Court could reduce a sentence after the defendant provided substantial assistance if "reducing the

sentence accord[ed] with the Sentencing Commission's guidelines and policy statements."  The

2007 amendment eliminated this language.

The Advisory Committee Notes to the 2007 revision explain the purpose of the

amendment:

> The amendment conforms Rule 35(b)(1) to the Supreme Court's
> decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160
> L.Ed.2d 621 (2005).  In *Booker*, the Court held that the provision of
> the federal sentencing statute that makes the Guidelines mandatory,
> 18 U.S.C. § 3553(b)(1), violates the Sixth Amendment right to jury
> trial.  With this provision severed and excised, the Court held, the
> Sentencing Reform Act "makes the Guidelines effectively advisory,"
> and requires a sentencing court to consider Guidelines ranges, *see* 18
> U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the Court to tailor
> the sentence in light of other statutory concerns as well, see § 3553(a)
> (Supp.2004).  *Id*. at 245-46, 125 S.Ct. 738.  Subdivision (b)(1)(B) has
> been deleted because it treats the guidelines as mandatory.

Fed. R. Crim. P. 35 advisory committee's notes (2007 amendments).

The Committee decided to conform Rule 35 to *Booker* after a subcommittee of the

Advisory Committee on Criminal Rules reviewed whether the Court's decision in *Booker*

required any amendments to the rules.  Minutes of the Advisory Committee on Federal Rules of

Criminal Procedure, April 4 & 5, 2008.  The subcommittee believed that "strong arguments

existed for amending," Rule 35, because the requirement that any reduction in sentence be in

accordance with the guidelines "assume[s] that the sentencing guidelines are mandatory - a

principle rejected the Supreme Court in *Booker*."  *Id*.

The Advisory Committee approved, without objection, the *Booker* conforming

amendments to Rule 35 notwithstanding the Sentencing Commission's request that the Committee "preserve[] the existing rule's explicit reference to the Sentencing Guidelines and questioned whether the *Booker* remedial opinion applied to post-sentencing proceedings." Minutes of the Advisory Committee on Criminal Rules, April 3 & 4, 2006.[9]

The history of the amendment to Rule 35 is instructive here for a number of reasons. Even though the Judicial Conference of the United States, through its advisory committee, carefully reviewed *Booker's* affects on the sentence reduction provisions of Rule 35(b), and even though the Judicial Conference rejected the Commission's view that *Booker* did not apply to post-sentencing proceedings," the Commission nonetheless promulgated U.S.S.G. § 1B1.10 - claiming that *Booker* does not alter the mandatory nature of the guidelines under 18 U.S.C. § 3582(c).

The Commission's efforts to make the guidelines mandatory in the context of a § 3582 sentencing reduction should be rejected. Rule 35(b) and 18 U.S.C. § 3582(c) both represent limited circumstances under which a court may reduce a final sentence. Because the Judicial Conference read *Booker* as making the guidelines advisory in the context of a motion for reduction of sentence under Rule 35(b), it would promote uniformity in *Booker's* application for this Court to conform § 3582 to *Booker* and read the language "consistent with applicable policy statements" as referring to advisory, not mandatory guidelines.

Just as the Supreme Court in *Booker* sought to preserve the Congressional intent behind

---

[9] Also noteworthy is the absence of any objection by the Department of Justice to the Committee's view that the sentence reduction provision of Rule 35 should be amended to conform with *Booker*. Indeed, after extensive notice and comment procedures, the Sentencing Commission apparently voiced the sole dissent to the Committee's proposal to conform Rule 35 to *Booker*.

the Sentencing Reform Act, this Court should preserve that intent, while recognizing the very

real changes brought by *Booker*.  The best way to do that is preserve Congress's intent to vest the

Commission with the authority to determine when a guideline should be made retroactive, and

thus trigger the Court's authority to reduce a sentence under 18 U.S.C.§ 3582, but permit the

Court to determine whether to reduce the sentence and the extent of any reduction through

application of *Booker*.[10]

IV.    **Many of the § 3553(a) Factors Show That Reduced Sentences for Each of These Defendants Is "Sufficient, but Not Greater Than Necessary" to Accomplish the Goals of Sentencing**.

This memorandum is not intended to apply the § 3553(a) factors to the individual

circumstance of each defendant.  Whether the Court should ultimately reduce a sentence for a

particular defendant, and the extent of any reduction, is a question for another day - a decision

that can be made after the Court makes the initial determination that the door has been opened

for the Court to use its authority to reopen, and reduce, the sentences under § 3582.

Each of these defendants, however, have compelling arguments for a sentencing

reduction.  For example, Norman Brown's prison conduct has been nothing short of exemplary.

He has taken on a leadership role with younger inmates by facilitating mental attitude awareness

programs along with unit staff.  The groups he led drew capacity crowds of inmates looking for a

positive role model.  He receives outstanding work reports and has maintained superior

---

[10]  That Congress has not amended 18 U.S.C. § 3582 to conform to *Booker*, but remained silent on the 2007 Rule 35(b) amendment, does not reflect a Congressional intent to leave the guidelines mandatory in the context of § 3582 motions.  After *Booker*, Congress heeded the advice of many lawyers, academics, and organizations, and made no legislative response to *Booker*, choosing instead to "wait and see" how *Booker* played out in the Courts.  Hence, Congress has left intact all of the Sentencing Reform Act, even those provisions *Booker* expressly excised.

disciplinary conduct.

Melvin Ford also has participated in, and led, institutional programs - primarily geared toward parenting. He maintains a sold relationship with his family (his mother, two daughters, one son, and three granddaughters) and remains deeply committed to their well being.

While we have been unable to gather information about Jeffrey Reid's prison progress, Mr. Reid is perhaps the closest to release. He has been approved for transfer to a residential re-entry center on July 10, 2008. Mr. Reid therefore will soon begin his transition back into the community where he will eventually reside with his fiancé in Waldorf, Maryland.

Michael Smith earned his GED while incarcerated. He completed the 40 hour drug program and gained a trade in warehouse work. Michael Smith has maintained good prison conduct, having been housed at a camp since 2001.

Walter Smith, like Mr. Reid, is also near release. He should be moving into a community confinement center in September 2008. While we do not at this time have information about Mr. Smith's institutional progress, it appears to have been marked by good conduct. It is also noteworthy that Walter earned a bachelor's degree from Howard University prior to his incarceration. That education should serve him well upon his release.

Paul Winestock's prison conduct has been exemplary. Mr. Winestock was chosen from "approximately 115 men" from the camp at FCI Fairton to participate in a youth outreach program - Reaching out to Provide Enlightenment (ROPE). He is described by the ROPE coordinator as "consistently dependable" and having "a strong personal commitment to the youth." Mr. Winestock also received a commendation for assisting a correctional officer who had passed out in the unit. Rather than taking advantage of the security breach posed by the

officer's plight, Mr. Winestock obtained the necessary medical assistance for the officer.

While a short summary of years of incarceration, the information set forth above demonstrates that each of these defendants is a worthy candidate for a sentence reduction. They have spent years of their lives behind bars. Rather than join gangs, menace other inmates and correctional officers, or otherwise present management problems, they have quietly done their time. All they seek now is a modest sentence reduction that partially corrects the grave injustice wrought by the disparity in the 100-to-1 crack/powder ratio.

### Conclusion

For the reasons stated here and as may be further developed in later proceedings, the defendants request that this Honorable Court rule that it has the authority to reduce their sentences and order further proceedings to determine the extent of the reduction for each defendant.

Respectfully submitted,

Denise C. Barrett        #06734
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street,
Suite 1100, Tower II
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-0872
Email: denise_barrett@fd.org

26

## REQUEST FOR HEARING

The defendants requests a hearing pursuant to Rule 105.6 of the Local Rules of the

United States District Court for the District of Maryland.


Denise C. Barrett
Assistant Federal Public Defender




## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___ day of May 2008, a copy of the foregoing

memorandum was delivered via inter-office mail to Barbara Sale, AUSA, United States

Attorney's Office, 36 South Charles Street, 4th Floor, Baltimore, Maryland 21201, and Estelle

Santana, USPO, 250 West Pratt Street, Suite 400, Baltimore, Maryland.



Denise C. Barrett
Assistant Federal Public Defender