IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

      vs.

NORMAN O'NEAL BROWN,

          Defendant

CRIMINAL NO.
WN-90-0454

Baltimore, Maryland

January 15, 1993

2:00 p.m.

REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDINGS
(Sentencing)

BEFORE:      THE HONORABLE WILLIAM M. NICKERSON

APPEARANCES:

    For the Government:

        BARBARA SKALLA, ESQUIRE
        Assistant United States Attorney

        JACK V. GEISE, ESQUIRE
        Assistant United States Attorney

    For the Defendant:

        J. DAVID ASH, ESQUIRE

REPORTED BY:

    Donna M. Becker

1    before also excludes the quantities that are in the

2    calculation that are not designated as hydrochloride or crack.

3    Certainly the evidence in this case is that Mr. Brown dealt

4    primarily with crack cocaine.  That was his drug of choice,

5    if you will.  He did obviously deal in cocaine hydrochloride

6    from time to time but most of the witnesses described his

7    pattern of his use as a distributor of crack.

8        We have not included in that calculation any of the

9    quantities that are not designated as crack cocaine with the

10   exception of the five and an eight that we converted based on

11   the guideline and the statute.

12       So certainly the calculation of 550 some ounces I

13   believe it was is again a very conservative one and we could

14   probably increase that by a hundred or so ounces or even more

15   if we convert all of the quantities that are indicated.

16   Again, we tried to do this in a very conservative way and we

17   have only used quantities that Mr. Brown is directly or nearly

18   directly connected with.

19       THE COURT:  Anything further, Mr. Ash?

20       MR. ASH:  No, Your Honor.  Thank you.

21       THE COURT:  As we already discussed of course, the

22   burden with respect to the evidence on this point is not

23   beyond a reasonable doubt but by a preponderance of the

24   evidence.  From my own recollection of the evidence, and

25   particularly my assessment of the credibility of the witnesses

3

1   that are referred to in the summary presented in the

2   government's memorandum here, including that of Andre Wallace,

3   who I found to be credible, I am satisfied that a minimum of

4   551 ounces that has been totaled here in this summary was

5   negotiated by Mr. Brown.

6        So that the appropriate level under the guidelines

7   for a base level would be a level 42, and that's my finding.

8        The next issue I suppose is that of the question

9   about the gun since that would attach to the base level if it

10  attaches at all as a specific offense characteristic.

11       MR. GEISE:  Your Honor, the burden is on the

12  government.  I will submit on that, what's in the PSI and the

13  government's arguments in its memorandum.  I don't have

14  anything to add to that.

15       THE COURT:  Mr. Ash, do you want to speak to that?

16       MR. ASH:  No, Your Honor.  I would reiterate what I

17  wrote in the memorandum.

18       One additional thing, Your Honor.  I would ask the

19  Court to consider, and I may have mentioned this.  I believe

20  I did in the memorandum.  Mr. Brown's dealing with an

21  undercover agent in this case and extensive wiretap in this

22  case, and all through that there is really nothing there to

23  indicate Mr. Brown used the gun during his drug activity and

24  I would submit on the memorandum.

25       THE COURT:  I have of course reviewed the memoranda

1   with respect to the issue, and my conclusion here is that the

2   government has not met its burden in this respect, that the

3   evidence is not sufficient for me to conclude that the gun

4   was kept in Mr. Brown's possession for facilitating drug

5   transactions.  The nature of the gun, shotgun, condition of

6   it when seized, I think add to that conclusion on my part.

7        So I will not enhance the base level with that

8   offense characteristic.

9        I guess that leads us into the next issue which

10  would be the role of Mr. Brown in this matter.  That is, the

11  government's contention that he was an organizer or leader

12  and that there should be an additional four levels added on

13  for that.  Mr. Geise.

14        MR. GEISE:  Your Honor, I would like to speak to that

15  just briefly.  I think we briefed it fairly extensively, Your

16  Honor.

17        As guideline 3 B 1.1 A points out, there should be a

18  four-level increase if the defendant was an organizer or

19  leader of a criminal activity that involved five or more

20  participants or was otherwise extensive.

21        So in fact the defendant doesn't even have to

22  personally supervise five or more people.  In fact I think

23  some of the commentary says you can have an extensive

24  organization even if those who are knowingly criminally

25  involved are less than five if they are using lots of other

3   1   people, albeit innocently, to carry out the criminal activity.

2   And the guideline itself, application note two,

3   points out, for instance, that a fraud that involves only

4   three participants but used knowing services of many outsiders

5   could be considered extensive.

6   The Court heard all the testimony.  I don't have to

7   reiterate it but it was clear that there was an extensive

8   organization here.  One, they argue about how tightly knit it

9   was.  The fact of the matter is that it was an extensive

10   organization.

11   As we pointed out in our memo, there were at least

12   five people that it is clear that Mr. Brown directly

13   controlled, supervised or directed.

14   To go through them very briefly, Your Honor.  The

15   five, and there were others as I said, but Derrick Curry,

16   Andre Wallace testified that Derrick Curry made deliveries

17   for Norman Brown on several occasions of the drugs.  That's

18   substantiated and supported -- also independent evidence -- by

19   the fact that Derrick Curry twice made deliveries to the

20   undercover agent for Norman Brown.

21   As the Court will recall, I believe it was on July 3,

22   1990 that Mr. Curry delivered Brown's crack cocaine to Special

23   Agent Bryant.  And also on I believe July 3rd Mr. Brown

24   actually accompanied Mr. Curry to the delivery and

25   Mr. Curry did the handover.  And then on July 26th, Norman

1    Brown negotiated a delivery of crack with Special Agent

2    Bryant, said Derrick will bring it to you and

3    Mr. Curry showed up.

4           It might have been the reverse, the joint meeting

5    might have been the second.  The point is, one time Norman

6    Brown accompanied Derrick Curry Derrick.  Derrick Curry did

7    the actual handover of the crack cocaine.  Another time

8    Derrick Curry was sent as the messenger.

9           The wiretap and the events surrounding the wiretap

10   also support the control over Derrick Curry.  Ms. Skalla

11   just mentioned the October 17th event.  As the Court will

12   recall, the wiretap indicated that Norman Brown was going to

13   make a sale of a kilo of crack cocaine to Tyrone Hughley.

14          Surveillance and the wire suggested that the cocaine

15   was going -- crack was initially going to be obtained from

16   Walter Smith.  Surveillance showed a vehicle linked to Norman

17   Brown going to Smith's.

18          The wiretap and surveillance then seized the meeting

19   with Tyrone Hughley and a delivery of some kind of bag, and

20   from the wiretap, clearly contained a kilo of crack.

21          There is then surveillance.  Derrick Curry who is

22   driving the vehicle.  Curry becomes suspicious, gets out of

23   the car, runs into a home, then calls Norman Brown.  There are

24   the wiretaps conversations of Norman Brown and Derrick Curry

25   discussing what's going on, and whether to get out of there or

4      1    not. Curry takes off. Special Agent McCulloh searches the

2    vehicle and there is a half kilo of crack cocaine.

3          So Curry is clearly being organized, used, controlled

4    by Norman Brown.

5          So too as to Michael Short, Your Honor.

6          Marcel Rice and Andre Wallace testified that Michael

7    Short acted as a delivery person for Norman Brown's crack

8    cocaine. I think Wallace said 90 percent of the time when

9    Norman Brown did not personally deliver, it was Curry. Now

10   how many times Norman personally delivered it and how many

11   times Curry did it, I don't think Wallace specifically

12   differentiated, but he did say that there was a fair amount

13   of of the time when Norman Brown would send someone else to

14   deliver it, usually Derrick Curry, sometimes someone else,

15   but the point is --

16         THE COURT: You mean Short?

17         MR. GEISE: Michael Short. I'm sorry. Michael

18   Short. Yes, Your Honor. Rice and Wallace both testified

19   about Michael Short. That's substantiated by one of the

20   first deliveries to an undercover agent.

21         On December 19, 1989, the Court will recall that's

22   the incident where Mr. Brown and Mr. Short arrive at I think

23   it's a drugstore. There is a short meeting between Special

24   Agent Bryant and Mr. Brown.

25         Mr. Brown says, my man over there will deliver the

1    drugs to you or give it to you.   Special Agent Bryant drives

2    over and Michael Short hands him two ounces of crack cocaine.

3              So the undercover activity supports what Rice and

4    Wallace said, that Michael Short was being used basically as

5    a courier, a delivery person, by Mr. Brown.

6              Marcel Rice testified that Rod who worked as a cooker

7    for Norman Brown -- this is third individual.  And we have two

8    deliveries by Rod Brown of Norman Brown's cocaine to

9    undercover agents.

10             Norman Brown would negotiate a delivery with Special

11   Agent Bryant, and on two occasions he sent Rod Brown as his

12   delivery person.  That was May 29, 1990 and September 14,

13   1990.

14             Then Your Honor there is Dwayne Foster.  This is the

15   fourth person who is directly controlled.  Foster testified

16   basically that he got involved in the activity with Norman

17   Brown and that he was delivering Norman Brown's crack and

18   picking up money to pay for it.

19             It's conceivable, Your Honor, that Foster was

20   sometime simply being fronted cocaine and selling it on his

21   own but it's also clear from his testimony and from the

22   wiretap calls that sometimes he was simply acting as a

23   delivery person and a pick-up person, delivered the crack,

24   picked up the money, took it to Norman Brown.  That's a fourth

25   person who was being directly controlled.

4

.5

1          Finally, Your Honor, there was the testimony of

2    Michael Holmes.  There again both his testimony and the

3    conversations show that Holmes was basically being used and

4    controlled by Norman Brown to deliver crack cocaine and to

5    pick up the money.

6          Indeed, Your Honor, Holmes' testimony was that he

7    never himself actually ever sold that.  Foster sometimes I

8    believe did make sales of his own but he also acted as a

9    courier.  Holmes' testimony was that he never actually made

10   any personal sales.  He was always acting as a delivery

11   person and picking up the drugs, and that too is substantiated

12   by the wiretap where we have conversations with Norman Brown

13   directing Holmes what to do.

14         So even though the guidelines don't require direct

15   control over five people, the major organization, control,

16   leadership in a large organization, here we have actual direct

17   control, Your Honor.

18         So I suggest to the Court under the guideline that

19   there should be a four-level upward increase for role.

20   Mr. Brown was an organizer, leader, controller, in an

21   extensive organization involving five or more people.  In fact

22   he personally organized, controlled, directed those five

23   individuals and possibly others.  So the four-level increase

24   is appropriate.

25         THE COURT:  Mr. Ash.

1     MR. ASH:  Your Honor, I would point out to the Court

2     as I did in my memorandum the government's witnesses indicate

3     to the Court that they didn't work for Norman Brown, nobody

4     worked for anybody.  That there was considerable evidence,

5     comments, by Wallace, Rice, and I think Holmes, it may have

6     been Foster, where they indicated to the Court that there was

7     no organization and that they clearly did not work for Norman

8     Brown.

9           Because Norman Brown and Michael Short took over

10    some crack cocaine to Agent Bryant from Norman Brown, and

11    Norman Brown said my man will bring it to you, can the Court

12    honestly infer from that that Michael Short was working for

13    Norman Brown?  It's really interesting.

14          I spoke to each one of these defendants at some

15    point in time during the trial and all of them were of the

16    belief that no one worked for anybody.  I know that's coming

17    from the defendants but clearly their perception was that

18    there was no organization and they were always struck by the

19    government's allegation that there was such an organization.

20                              (pause)

21          I think the Court is guided by commentary three in

22    the application notes.  And I don't think that Mr. Brown's

23    participation rises to the level of an organizer, leader,

24    supervisor.  I would respectfully ask the Court not to enhance

25    Mr. Brown based on his role and would submit on the balance of

1    what I have indicated in the sentencing memorandum, Your

2    Honor.

3              THE COURT:  Anything else, Mr. Geise?

4              MR. GEISE:  No, sir.

5              THE COURT:  My consideration on this issue includes

6    not only the refreshing of my recollection by way of the

7    government's memorandum as it has been referred to but my own

8    notes and independent recollection with respect to the matter

9    overall.

10             To me the evidence is better than a preponderance

11   with respect to the government's contention on this issue.

12             The evidence is at least clear and convincing to me

13   that Norman Brown exercised a significant degree of control

14   over these individuals that Mr. Geise has just referred to,

15   Derrick Curry, Michael Short, Rod Brown, Dwayne Foster and

16   Michael Holmes.

17             It's also clear to me that the activity here was

18   extensive and that the guideline requirement is met as to

19   both issues, that is, the organizer, leader, involving

20   activity with five or more participants, or otherwise

21   extensive.

22             So for that reason, without any hesitation, I

23   conclude that that is an applicable adjustment and warrants

24   an increase of four levels, Mr. Brown's role.

25             There is another issue and that is the issue of

1    acceptance of responsibility to be addressed.

2        MR. ASH:  Your Honor, I believe I will submit on

3    that argument.  As to what I put in my memorandum, I think

4    Mr. Brown has accepted responsibility for what he believes

5    he did.  I think he indicated that to Mr. Delash.

6        I know there is a case out there that says the

7    defendant should get acceptance of responsibility if he went

8    to trial to preserve a constitutional issue.  That seems to

9    me rather interesting.  I know Mr. Geise said in his

10   memorandum that Mr. Brown could have come on down here and

11   pled guilty to the substantive counts and that would have been

12   obviously admitting his responsibility for those counts.

13       Mr. Geise and I went around it a little bit but I

14   know that the government would not have accepted Mr. Brown's

15   plea to the substantive counts and then agree not to try

16   Mr. Brown on the conspiracy.  I think that is clear and I

17   think Mr. Geise would -- what he told me before on that issue

18   was it would have been his decision -- he would have been able

19   to decide what to do and I would submit to the Court and to

20   Mr. Geise most respectfully that I believe that he would have

21   gone ahead and tried Mr. Brown on the conspiracy counts.

22       THE COURT:  Even assuming that to be true, in order

23   for one to avail himself of this reduction, looking ahead,

24   would not one be required nonetheless to make a record of some

25   kind, if only a letter saying I am ready, willing and able to

1  plead to the substantive counts, do what you will with regard

2  to conspiracy?

3          MR. ASH:  I think if you -- other people have

4  indicated that to me, Your Honor.  I don't think that under

5  any circumstances that they would have accepted my offer, my

6  request.

7          THE COURT:  My point is, does that matter whether

8  they would have accepted it or not.  Isn't the burden really

9  on the defendant?

10          MR. ASH:  Sure.  I appreciate that, Your Honor.

11  If the defense attorney says to the defendant you should

12  accept responsibility for these -- for the overt acts that

13  the government is charging you, if you accept that you

14  committed them and tell the government that you committed

15  them, I think that the defense attorney would lose all

16  credibility with his client, his or her client.

17          And clearly if we had done that, and we did make a

18  record of it, and I agree with the Court I never wrote to

19  Mr. Geise and suggested that.  I was with Mr. Geise for hours

20  on end trying to negotiate some kind of a plea that never

21  came to fruition.  The defendant doesn't get the benefit of

22  accepting his responsibility now because he made the

23  government prove him guilty.

24          I had a case once in front of Judge Black and he

25  gave the defendant -- in that case my guy was in trial for

16

1    ten days, and then on the eleventh day pled guilty.  And

2    Judge Black gave that gentleman acceptance of responsibility

3    over the prosecutor's argument that, hey, he made the

4    prosecutor try this case for ten or eleven days and Judge

5    Black commented that it didn't matter how long or if there

6    was a trial.  In his mind, that not allowing the defendant a

7    two-level reduction for acceptance of responsibility really

8    means if you tell the defendant that early on, the defendant

9    may not go to trial to contest whether or not he is guilty.

10        And he is being punished by exercising his

11   constitutional right, and I know what the law says, and I know

12   what the cases say, but they really are being punished by

13   exercising their constitutional right, by saying they are not

14   guilty.

15        In this case, the jury came back -- and he exercised

16   that right on two conspiracy counts of great magnitude and a

17   CCE count of even greater magnitude, and he said all along

18   that he wasn't -- it was his position and I believe that the

19   jury's verdict indicates that it was their position that these

20   people were not guilty of those things.  And now we are at

21   sentencing and he doesn't get the benefit of that two-level

22   reduction, although I'm not sure what good it's going to do

23   him right here.

24        I can't argue on the law, Your Honor, because I know

25   what the law says and the law is against me and I think the

6

1   law is wrong.  Clearly that will be one of the appellate

2   issues raised and I don't want to waste any more of the

3   Court's time, but I think the Court should give Mr. Brown a

4   three-level reduction because he did tell Mr. Delash shortly

5   after the the trial and certainly before the defense

6   attorneys were notified of the meeting with Mr. Delash or had

7   any knowledge of that meeting that he did accept

8   responsibility for what he did.  And he didn't limit his

9   responsibility in terms of the five overt acts or in terms of

10  the entire conspiracy.  That's not indicated in the PSI I

11  don't believe.

12          THE COURT:  Mr. Geise.

13          MR. GEISE:  Your Honor, just a few brief comments.

14  It seems to me that Mr. Ash is certainly entitled to argue to

15  the Court that it should disregard the case law of the Fourth

16  Circuit.  On the other hand, that the Court can't.

17          Counsel is certainly entitled to make that argument

18  but the Court has to follow what the law is, at least until

19  two judges -- majority of the Fourth Circuit or the majority

20  of the Supreme Court disagree.  The law is very clear that the

21  defendant has no entitlement to this.

22          That it is not a burden on his Fifth Amendment right

23  to say he will not get this adjustment if he chooses to put

24  the government to its proof.  And the guidelines say exactly

25  that.

16

1          Application note two says this adjustment is not

2     entitled to apply to a defendant who puts the government to

3     its burden of proof at trial by denying the essential factual

4     elements of guilt, isn't convicted, and only then admits guilt

5     and expresses remorse.

6          Secondly, Your Honor, it may well be as Mr. Ash said

7     that it would have been foolish for his client to plead to the

8     substantive counts but that isn't really the point.

9          I am not only acquainted with this argument which is

10    why I sent out the letter of August 30, 1991 inviting anyone

11    to enter a conditional guilty plea if they wished so that they

12    could not therefore argue that they went to trial to protect

13    some legal right.

14         I don't think Mr. Ash is arguing that he thought

15    there was some suppression issue or similar item that he went

16    to trial to preserve because we would have been taking a

17    conditional guilty plea say under the wiretap.  If Mr. Ash

18    had suggested to me that Mr. Brown wished to show the Court

19    his affirmative acceptance of responsibility by pleading to

20    the substantive counts, I would have been happy to appear for

21    him to plead to that.

22         A couple of reasons for that, Your Honor.  First,

23    I can't stop as far as I am aware a defendant pleading to any

24    count he wants.  That is, I think he would have a right to

25    plead guilty.  I would be under no obligation to dismiss the

1   other counts but he certainly would have the right to plead

2   guilty if he wished to show the Court an affirmative

3   acceptance of responsibility.

4          Indeed, one counsel did suggest to me that his

5   client would be willing to plead to substantive counts to

6   preserve the argument that he had accepted responsibility.

7   That was not Mr. Ash.  That was Mr. Purpura.  And as the

8   Court will see in my reply memorandum, at Tab B I attached

9   a letter of September 10, 1991 to Mr. Purpura indicating that

10  the government was more than willing to accept substantive

11  pleas from Mr. McGill if he really had a deep desire to show

12  his acceptance of responsibility.

13         Nonetheless, we would be able to go forward on the

14  conspiracy counts if we wished.  Quite candidly, Your Honor,

15  in Mr. McGill's case, we may have chosen not to.  As we are

16  aware, there were more than enough defendants in that trial.

17  It's quite conceivable with Mr. McGill that we might have

18  just gone on the substantive counts, assuming as I think the

19  Court later found that we could still bring in the other

20  evidence as relevant conduct under those substantive counts.

21  It might have been worth our while to.

22         I will be quite candid with the Court, I very much

23  doubt we would have done that with Mr. Brown.  But that's not

24  really the point.

25         The point is that if he wanted to show affirmative

1    acceptance of responsibility to those substantive counts, and

2    demonstrate to the Court that he accepted his guilt on those,

3    regardless of the other issues of the conspiracy, he

4    certainly could have come and pled and we couldn't have

5    stopped him.  Indeed, frankly, Your Honor, we would have

6    agreed to that.  We still might have gone forward on the other

7    counts but we would have had definite pleas to definite

8    counts.

9         So the defendant did nothing to affirmatively accept

10   responsibility.  I think Mr. Ash makes the point to the Court

11   today and he did in his pleading that it would be foolish for

12   the defendant to do that.  He wouldn't have gotten anything

13   out of it, that is, there wouldn't have been any benefit.

14        What he is saying to the Court is that any acceptance

15   of responsibility would have been a mere calculation, it would

16   have only occurred if there would have been a benefit.  I

17   don't deny to the Court in practice that might be what

18   happens.

19        But the guidelines themselves are very clear that

20   that can't be the only reason or that there has to be some

21   affirmative act.  There is simply no affirmative act of

22   acceptance prior to trial.

23        And even the admissions to the probation office

24   appear to have been limited which is indeed why Ms. Skalla

25   invited Mr. Brown today to say what he admitted to.  Not that

1   it wasn't our burden to prove the quantity but that that

2   could be another minor element.  Again it would have been so

3   far after trial as not to have any impact under the

4   guidelines.

5           But the point is that any acceptance of

6   responsibility was limited.  It only came well after the

7   trial, and therefore under the guideline as it's written,

8   Mr. Brown simply isn't entitled to any acceptance although as

9   Mr. Ash points out it's probably academic in any case.

10          THE COURT:  Anything else, Mr. Ash?

11          MR. ASH:  No thank you, Your Honor.

12          THE COURT:  As has already been alluded to, the law

13  is rather clear in respect to this issue.  For whatever it's

14  worth, if the situation were the same as that which you

15  described in the matter before Judge Black, I would have done

16  exactly what Judge Black did and would have given a reduction

17  for acceptance of responsibility.

18          But this is a different situation and it fits

19  squarely within the application note two and for that reason

20  I believe precludes an acceptance of responsibility

21  adjustment.  So I am going to deny the request for an

22  adjustment on that basis.

23          The next issue if it is an issue deals with criminal

24  history.  The presentence report concludes is six points with

25  a category three.  Is that an issue?

1          MR. ASH:  No, Your Honor.

2          MR. GEISE:  Not for the government, sir.

3          THE COURT:  All right.  In that case it appears as

4     though we have dealt with all of the guideline issues that

5     counsel intended to bring to the Court unless there is

6     something I have missed.

7          It would appear that the bottom line at the moment

8     then in accordance with the findings that I have made is a

9     guideline level 46, category three.  It's off the chart so to

10    speak which I believe under the guidelines reverts back to a

11    43.  So that the finalized guideline sentencing range is not

12    truly a range.  It's as indicated in the table life

13    imprisonment as to count -- all counts:  Five, six, fourteen,

14    nineteen, twenty-four and twenty-six, although the counts six

15    through twenty-six will run concurrently.

16         There is also a guideline range with respect to

17    supervised release, superfluous as it might appear, but who

18    knows what might occur with respect to the guidelines at some

19    point in time.

20         I believe I am correct but, if not, counsel will tell

21    me, that the guidelines with respect to supervised release

22    indicates a range of three to five years as to each count.

23         With respect to fine, the guideline range here would

24    be up to the maximum four million dollars and a special

25    assessment of fifty dollars as to each count for a total of

8

1     $300.

2              Any disagreement with the interpretation of what the

3     guideline ranges are given a level 46, category three?

4              MR. GEISE:  No, sir.

5              MR. ASH:  No, Your Honor.

6              THE COURT:  All right.  I think that brings us back

7     to the allocution issue.

8              MR. ASH:  I'm sorry, Your Honor?

9              THE COURT:  I think that brings us back to the

10    allocution that we spoke about earlier.

11             MR. ASH:  Thank you.

12             THE COURT:  If you would like to be heard.

13             MR. GEISE:  Your Honor, one minor thing.  Probation

14    Officer knows these things better than any of us.  Under the

15    statute, it's a mandatory ten years supervised release which

16    would be longer than the guidelines period anyway.  I believe

17    that's correct.

18             THE COURT:  I understand that that relates to the

19    statute.

20             MR. ASH:  We were dealing with the guidelines.

21             PROBATION OFFICER:  That's the statute.

22             MR. GEISE:  Guideline though is still five years.

23             PROBATION OFFICER:  No, the guideline -- Your Honor,

24    the guideline says that if there is a mandatory term of

25    supervised release in the statute, then that is also the term

18

1    for the guideline.

2                THE COURT:  Then that's the guideline term.

3                PROBATION OFFICER:  Yes, Your Honor.

4                THE COURT:  Do you happen to know where that appears

5    in the guideline?

6                PROBATION OFFICER:  Yes, Your Honor.  I can give that

7    to you in a second.  It's under Section 5 D which would be

8    page 301.

9                THE COURT:  That's where I am looking.  5 D 1.2 A.

10               PROBATION OFFICER:  Yes, Your Honor.

11               THE COURT:  If defendant is convicted under a statute

12   that requires a term of supervised release, the term shall be

13   at least three years but not more than five years or the

14   minimum period required by statute, whichever is greater.

15               PROBATION OFFICER:  Yes, Your Honor.

16               THE COURT:  Thank you.  So that what I indicated

17   earlier with regard to supervised release as it relates to the

18   guideline range is incorrect.  It would be ten years as to

19   each count.  That would be concurrent.

20               MR. ASH:  Your Honor, I have spoken with Mr. Brown

21   and advised him that he has an opportunity to speak to the

22   Court.

23               Mr. Brown, is there anything that you wish to say at

24   this time?

25               THE DEFENDANT:  (no response)

1          MR. ASH:  He has nothing, Your Honor.

2          THE COURT:  Mr. Ash, anything that you would like to

3    say?

4          MR. ASH:  Your Honor, I have five hours worth of

5    stuff to say about this case but nothing that can I suspect

6    change the Court's mind.  And it's late.  Thank you, Your

7    Honor.

8          THE COURT:  Anything from the government?

9          MR. GEISE:  No, sir.

10         THE COURT:  Judgment needs to be entered with respect

11   to both aspects of the matter as we discussed at the outset.

12         First of all, with regard to the statute and having

13   found that the statute regarding the minimum mandatory life

14   without parole applies, I must enter sentence with respect to

15   that.

16         My personal philosophy with regard to these statutes

17   is absolute opposition for several reasons which I need not go

18   into.  And just as Mr. Ash is waiving the hours that he could

19   expound with regard to arguing the case from his viewpoint, I

20   also view Mr. Brown's situation with some empathy as well as

21   that of his co-defendants.

22         It's obvious that the attraction to this venture in

23   cocaine trafficking was considerable.  The peer pressure was

24   considerable.  Of course that does not alter the seriousness

25   of it or excuse Mr. Brown from the punishment that Congress

1    has dictated is the will of the people in these matters and is

2    required by law.

3            So with respect to the conviction under the statute,

4    it's the judgment that Mr. Brown as to count six be committed

5    to the Bureau of Prisons for the remainder of his life without

6    parole.  That same sentence is imposed with respect to count

7    24 but to run concurrently with sentence imposed as to count

8    6, same sentence as to count 26.  Also to run concurrently

9    with the sentence imposed as to count 6.

10           In addition, I am imposing a term of supervised

11   release of ten years with the standard conditions attaching

12   that appear on the judgment form of this court and the

13   conditions as recommended in the presentence report, that the

14   defendant not commit any crimes, federal, state or local, or

15   not possess any illegal drugs.

16           With respect to a fine, given the financial situation

17   as it is outlined in the presentence report, and which the

18   Court accepts, although we haven't discussed this, I don't

19   know whether Mr. Ash wants to be heard with respect to this

20   matter or not.

21           There is a recommendation in the presentence report

22   with respect to a fine.  Did you want to be heard on that?

23           MR. ASH:  Your Honor, I forget what the

24   recommendation was.

25           THE COURT:  The recommendation is a fine of $10,000

9

1  which relates essentially to the settlement that occurred some

2  years ago with respect to the automobile accident that

3  Mr. Brown was involved in.  There are some funds in excess of

4  that amount that are being held in an account of some type.

5       MR. ASH:  I apologize to the Court.  It's a section

6  of the PSI that I did not give great weight to.

7       THE COURT:  Given the overall nature of the matter,

8  I can appreciate that fact.

9       MR. ASH:  I would object to the position of a fine,

10  Your Honor.  I would strenuously object to the imposition of

11  a fine.  Mr. Brown has a 15 month old son.

12       I believe and I am not sure quite frankly if any

13  money remains from that settlement at this point in time.

14  If any money does remain, I would assume that Mr. Brown's

15  mother is in control of that money, mother or father, and I

16  know that they would earmark that money for the benefit of

17  his son.

18       It seems somewhat specious to argue against the

19  imposition of a ten thousand dollar fine when the Court has

20  just imposed life without parole based on two separate issues

21  of law.

22       Mr. Brown, when he was about twelve, thirteen years

23  of age was in an automobile accident.  Included in the car

24  were I think an aunt, a couple of cousins.  The accident

25  involved the car Mr. Brown was riding in being struck by

19

1    another car.  The force of the blow to the car in which

2    Mr. Brown was riding knocked down a gas pump at a gas station

3    in North Carolina.  There was a fire.  I believe someone was

4    killed.  Mr. Brown was taken from one of the windows of the

5    car and pulled out of the car by his arm by a gas station

6    attendant.  He still has some marks on his arm from that

7    accident.

8         I don't think that the presentence report should be

9    adhered to by the Court.  I quite frankly think it was an

10   insult to the Court by the PSI person to recommend that,

11   given that his recommendation to the Court was life without

12   parole.  And I would ask the Court not to impose any fine.

13        MR. GEISE:  Your Honor, given the circumstances, I

14   should say that the Probation Officer simply did his job in

15   the way he should, professionally.  Given the circumstances,

16   I am certainly not going to press for any fine.

17        THE COURT:  Well, in the hopes that what Mr. Ash has

18   indicated has occurred or if it hasn't will occur, that is to

19   say, if there are such funds, that they will be earmarked for

20   the child.  That certainly in itself in my view warrants

21   voiding the imposition of a fine in this instance.  I am going

22   to take it as a given that that is what is going to occur and

23   will not impose a fine.

24        MR. ASH:  Thank you, Your Honor.

25        THE COURT:  Of course the special assessment is not a

9

1    matter that I waive and it will be imposed.  It's fifty

2    dollars as to each count.  The statutory matter involves three

3    counts so it will be $150.

4            Then with respect to sentencing in accordance with

5    the guideline determinations, the same result of course occurs

6    in view of the level which the Court has reached as the

7    appropriate level.

8            Obviously this whole matter is a tragedy, not only

9    for Mr. Brown but for his family, as well as for the

10   community.  The community should have had considerable benefit

11   from Mr. Brown who is I think a man of some talents and

12   intellect and energy but now the community is going to have to

13   utilize its own resources to support him.  So it's a tragedy

14   from all aspects.

15           Nonetheless, the judgment is that Mr. Brown is

16   committed to the Bureau of Prisons for the term of his natural

17   life without parole as to count five.  That same sentence is

18   imposed as to the remaining counts, six, fourteen, nineteen,

19   twenty-four and twenty-six but to run concurrently as to each

20   of those counts with the sentence in count five.  Again, a

21   term of supervised release of ten years as to count five.

22           And, in addition, the same term as to count six,

23   fourteen, nineteen, twenty-four, and twenty-six but to run

24   concurrently with the term under count five and the conditions

25   attaching being the same as those indicated earlier, that is,

1    standard conditions on the judgment form and that Mr. Brown

2    not commit any crimes, federal, state or local, and not

3    possess any illegal drugs.

4          No fine will be imposed for the reasons communicated

5    earlier.

6          Special assessment here is fifty dollars as to each

7    count but there are six counts here so that the total is $300.

8          It's obvious that the assessment is not combined for

9    a total of $450.  It is a maximum of $300.

10          Anything that counsel perceives has been omitted with

11    respect to sentence?

12          MR. GEISE:  No, sir.

13          MR. ASH:  No, Your Honor.

14          THE COURT:  Mr. Brown, you understand that you have a

15    right of appeal on the matter.  That appeal needs to be filed

16    within 10 days time.  I am sure Mr. Ash will be glad to

17    discuss with you the details of filing an appeal.

18          You have the right to have in conjunction with any

19    such appeal such transcripts or records as are necessary.  If

20    you have any questions about that, I suggest you discuss it

21    with Mr. Ash.

22          If credit is a factor, that's a matter for the Bureau

23    of Prisons to determine.

24          MR. ASH:  Your Honor, there is one thing that I would

25    ask the Court and I don't know what power the Court has over

1   this but I am sure this isn't the first time you have heard

2   it.  Anything that the Court can do to advise the Bureau of

3   Prisons that Mr. Brown should be located in a facility as

4   close to Washington, D.C. as possible would be appreciated by

5   Mr. Brown and his family.

6           THE COURT:  I think you are probably aware I don't

7   have authority --

8           MR. ASH:  I understand.

9           THE COURT:  -- to dictate that but I can and will

10  make a recommendation to the Bureau of Prisons that Mr. Brown

11  be located as close as he can to his family.

12          THE DEFENDANT:  Thank you, Your Honor.

13          THE COURT:  Good luck to you, Mr. Brown.

14          (At 4:30 p.m., the sentencing hearing concluded.)

15

16

17

18

19

20

21

22

23

24

25