IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

      vs.

JEFFREY ANDREW REID,
a/k/a  U.S.
           Defendant

CRIMINAL NO.
WN-90-0454

_____/

Baltimore, Maryland

January 22, 1993

REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDINGS
(Sentencing)

BEFORE:

      THE HONORABLE WILLIAM M. NICKERSON

APPEARANCES:

      For the Government:

           BARBARA SKALLA, ESQUIRE
           Assistant United States Attorney

           JACK V. GEISE, ESQUIRE
           Assistant United States Attorney

      For the Defendant:

           JAMES C. SAVAGE, ESQUIRE
           Assistant Federal Public Defender

REPORTED BY:

      DONNA BECKER

17

1    If it is what Mr. Savage indicated in this hearing, I have no

2    objection to that.

3         MR. SAVAGE:  That's what I would be asking for.

4         MS. SKALLA:  Then we would be willing to stipulate to

5    that.  There has been other correspondence  That's why I

6    asked.

7         MR. SAVAGE:  I would also indicate to the Court that

8    I had provided the Court with certain letters that

9    Ms. Lynch gave to me and I saw that the Court had read them

10   but I wanted to at least make it clear to them the fact that

11   the Court had reviewed those letters and was taking that

12   information into consideration.

13        I would also indicate that the family is here.  They

14   will answer any questions that the Court might have.  I have

15   explained to Mr. Reid that he has an opportunity to address

16   the Court and I will ask him if he is prepared to do that.

17        THE COURT:  I think perhaps it would be more

18   appropriate before we get to that to resolve the guideline

19   issues and then have a determination made as to what range we

20   are talking about.  If he wants to address me, you can address

21   me further with respect to what the ultimate sentence should

22   be based on those considerations.

23        We will work backwards.  I will indicate my findings

24   first with regard to the government's position that there

25   should be an adjustment with respect to the role that Mr. Reid

played here.

My view of what has been presented to me today and what I have reviewed in terms of my own notes and my own recollection of what the evidence was brings me to the conclusion that this is a very close factual question. The bottom line is that I simply am not satisfied that the government has met its burden by a preponderance of the evidence that Mr. Reid in fact fits the criteria that are set out in the guideline for an aggravating role even though we are talking about the lesser of the three roles that are defined in the guidelines. I don't think I need to say anymore about it than that. I am not going to add the two levels that are requested for role adjustment.

With respect to the question about acceptance of responsibility, I certainly recognize that that is an issue that is not necessarily lost by reason of having gone to trial and having put the government to its proof. Nevertheless, it becomes a very difficult proposition for a defendant in that circumstance. The guidelines are fairly clear I think with respect to the constraints that exist in that circumstance.

Notwithstanding what the situation is that brings a defendant to requesting the adjustment after trial, the guideline is clear that in such instance the determination that the defendant has accepted responsibility will be based primarily upon pretrial statements and conduct.

18

1          First, it appears to me that what has occurred does

2     fall short as Ms. Skalla has pointed out in terms of

3     post-trial acceptance.  There simply has been little if any

4     acceptance with regard to the relevant conduct, some if not

5     most of the relevant conduct that is attributed to Mr. Reid.

6          As I indicated earlier, what is set out in the

7     presentence report has had no bearing whatever on my view with

8     respect to this.  What has been argued today has not been

9     backed up by actual evidence to indicate specifically what

10    Mr. Reid was willing to accept as his responsibility at the

11    outset.

12         I understand that negotiations back and forth are

13    difficult and I understand Mr. Savage's position with regard

14    to his view, and I guess it is the view of many if not all

15    defense counsel as to how this was being approached by the

16    government counsel.  But in order to set the stage for

17    acceptance of responsibility, it seems to me that it's

18    incumbent upon a defendant to do that in a manner that will

19    make it clear to the Court when the time comes that there

20    has in fact been a sufficient acceptance to warrant the

21    adjustment.  My view is that that has not occurred here.

22    So I am not going to make that adjustment in favor of

23    Mr. Reid.  This leaves the basic consideration and concern

24    with regard to what the appropriate base level is in the

25    case.  And I have listened to what has been said.

18

1    There is a lot of empathy that I have frankly with
2    the philosophical aspects that are involved.  As Mr. Geise
3    points out, that's academic as far as this proceeding is
4    concerned.  Again, I have reviewed my own notes.  I have
5    studied the government's memorandum which goes back over the
6    relevant evidence involving Mr. Reid.

7    Without going through every item that is here, I
8    think it's sufficient to point out that my conclusion and
9    finding is that it is more likely than not that the five
10   kilograms that are referred to in these conversations of
11   November 12th and 13th are in fact five kilograms.  I think
12   the government has clearly met their burden with respect to
13   that.  And beyond that, as Ms. Skalla has pointed out, that
14   even if the cooking were to have reduced the amount to some
15   extent, the other evidence that is before the Court with
16   regard to Mr. Reid's involvement with more cocaine and crack
17   than that is very, very clear.

18   Perhaps the record should show that this is compiled
19   essentially on pages two through nine of the government's
20   sentencing memorandum.

21   Without going through each of these to indicate what
22   is clear to me beyond a preponderance of the evidence to be
23   attributable to Mr. Reid, my own calculations bring it above
24   eight kilograms.  On that basis, my conclusion is that a level
25   40 is inescapable and appropriate.

18

1          That gets us back to the criminal history matter

2     which I guess we need to discuss further since if I have heard

3     Ms. Skalla correctly, her position is that we should be

4     dealing with a category three rather than category two.  Is

5     that correct?

6          MS. SKALLA:  Yes, Your Honor.  What I was referring

7     to is the provision in guideline 4 A 1.1.

8          In the presentence report, beginning on page seven,

9     the criminal history calculation is set forth.  What's not

10    included in this, and Agent Mccoll is here -- was here -- is

11    here, and has reviewed the file relating to this particular

12    offense.  What he found, and he certainly testified.  If

13    Mr. Savage disputes the facts he may in fact have copies of

14    the documents.  Let me ask him if he does.

15                              (pause)

16         MS. SKALLA:  Your Honor, what happened in this

17    particular case, the factual predicate was that Mr. Reid

18    distributed cocaine to an undercover agent.  We have the

19

19    offense report if the Court would like to review it.  He was

20    charged with distribution and probably some lesser included

21    offenses.  We have the indictment if the Court would like to

22    review that.

23         He entered a plea to attempted possession, a lesser

24    included offense of the one charge and it indicates attempted

25    possession.  He was given I believe a suspended sentence on

19    1    that offense.  Subsequent to that he was arrested on

2    November 4th of 1987 for the offense listed in paragraph 53 in

3    the presentence report, the unauthorized use.

4    Subsequent to that arrest, he was, and I believe on

5    the same day as the plea in that case, he was resentenced

6    under the drug charge because he had violated the terms of the

7    suspended sentence provision.  So it's akin to a violation of

8    probation, and under the guidelines he gets an extra point for

9    that.

10    So consistent with the guideline calculation in the

11    presentence report, he ends up with three points for the

12    convictions on the offenses.  He gets a fourth point for the

13    violation of probation.  He may in fact get two extra points

14    for that.  Perhaps the Probation Officer is better at

15    calculating this than I am.  He doesn't get the points for

16    committing the offense while on probation, although there is

17    an argument for that.  We haven't pursued it.  He gets points

18    for being sentenced for a violation of probation, and I

19    believe he received --

20    PROBATION OFFICER:  He received 90 days.

21    MS. SKALLA:  -- ninety days, so he probably gets two

22    extra points for that which gives him five points.  Again, I

23    am not very good at this.  Maybe the Probation Officer can

24    better explain the calculation to the Court.

25    PROBATION OFFICER:  Your Honor, it's based on

19    1    4 A 1.2 K 1.  It says:  In the case of a prior revocation of

      2    probation, parole or supervised release, special parole or

      3    mandatory release, at the original term of imprisonment to

      4    any term of imprisonment imposed upon revocation, the

      5    resulting total is used to compute the criminal history points

      6    for 4 A 1.1 A, B or C as applicable.

      7         Therefore, that arrest would be scored under 4 A

      8    1.1 -- parenthetical B -- giving him two points for that.

      9         MS. SKALLA:  That's in place of the one point?

      10         PROBATION OFFICER:  In place of the one point.

      11         MS. SKALLA:  So he ends up with four total points

      12    which puts him in a Roman numeral three.

      13         PROBATION OFFICER:  Criminal history category Roman

      14    numeral three.

      15         THE COURT:  Let me start from the beginning so that I

      16    am clear with regard to this.  The information that is in the

      17    presentence report at page seven is correct as far as it goes?

      18         MS. SKALLA:  Yes, it is.

      19         PROBATION OFFICER:  Yes.

      20         THE COURT:  So he was sentenced to one year

      21    suspended, two years probation.  What then is the event that

      22    triggers this?

      23         MS. SKALLA:  He violated the terms of the probation

      24    and was sentenced to 190 days.

      25         THE COURT:  Do we have evidence of that?

19

1          PROBATION OFFICER:  Your Honor, I have a document in

2     the file.  It's a true test copy of a document from a judgment

3     and commitment order from the D.C. Superior Court dated

4     April 27, 1988.  It references the original conviction of

5     attempted possession with cocaine, noting violation, and he is

6     sentenced 90 days to run consecutive with any other sentence.

7     That's dated April 27, 1988.

8          THE COURT:  What do you mean consecutive to any other

9     sentence?  What do you think that means?

10          MS. SKALLA:  The unauthorized use sentence that

11     triggered the probation.

12          THE COURT:  I see.

13          MS. SKALLA:  The probation violation.

14          In accordance, Your Honor, the calculation on page

15     seven, paragraph 51, the score ought to be two instead of one,

16     which gives him four points which places him in category Roman

17     numeral three in criminal history.

18          THE COURT:  Mr. Savage, is there anything you want to

19     say about this?

20          MR. SAVAGE:  First off, I would say I am totally

21     surprised by it.  My idea of what the sentencing proceeding

22     is suppose to be is based upon at least again back to the

23     foundation of the presentence report.  We are in here and we

24     have gone back and forth on this thing and he has been pending

25     sentencing since conviction in July or May, I should say.  I

19    1    can't even remember now.  In any event, we are in here now

2    and we are talking about an increase on the sentence of five

3    years.  We don't even know for sure exactly what we are

4    talking about, whether in fact a consecutive sentence or

5    concurrent sentence affects that particular section, whether

6    in fact it really does qualify as a sentence that should give

7    him two points.  It's really uncertain.

20    8    And I think at this point, clearly at the eleventh

9    hour, after the Court has already announced what the base

10    sentencing level is, to change the criminal history category

11    would really be a violation of his due process.

12    This is the first time -- the government wasn't even

13    aware of it when they filed the memorandum.

14    THE COURT:  I appreciate your surprise.  If you want

15    some time to look into this.

16    MR. SAVAGE:  If the Court is inclined to push him to

17    a criminal history category three, of course I would.  I just

18    don't think it's fair at this point because we don't have the

19    jacket.  The government had an opportunity to get all this

20    information and they haven't done so.  Now we are in the

21    process of speculating with regard to what the Probation

22    Officer believes but did not file a corrected report.

23    I suggest to the Court it would be more appropriate

24    to proceed on the criminal history category two.  That's

25    what's stated here.  At least there was some open question as

20

1    to whether he is going go to qualify as a two or a three from

2    the very beginning of time and the assessment of this criminal

3    history.   It's always been my impression that he is a criminal

4    history two.

5         I have had discussions in the area that we have been

6    talking about a plea to this thing and the government didn't

7    disagree with me and they didn't disagree with me up until the

8    time that they filed the memo.

9         Your Honor, I think it would be inappropriate for the

10   Court to either postpone the sentencing or consider the change

11   in the criminal history based upon this kind of nonchalant

12   exchange.

13        THE COURT:  Well, the history is what it is.

14        MR. SAVAGE:  Your Honor, I think the history is what

15   it might be.  We aren't talking about certified records here.

16   The Court doesn't have anything in front of it.

17        THE COURT:  That's what I am suggesting, that you may

18   want to continue the matter rather than my accepting what has

19   been put before me.

20        MR. SAVAGE:  If the Court is inclined to accept it,

21   I certainly want it continued but my position would be that

22   it's not appropriate to continue it and the Court should

23   proceed on the basis of the criminal history that is outlined

24   here.  If the Court is inclined to go with the increase in the

25   criminal history, I certainly am going to want to at least

20  1    have some time to look into it.

2         THE COURT:  Ms. Skalla, how is it that we have this

3    information today and we didn't have it earlier?

4         MS. SKALLA:  Your Honor, none of this information

5    was in the computer documents, at least that we reviewed prior

6    to today.  It came to my attention when we were trying to

7    determine what Mr. Reid actually pled to in Washington.  And

8    Agent Mccoll was kind enough to go to Washington and look

9    through the file to see if the documents that we had were

10   incorrect.  And it was at that time that it was first brought

11   to my attention.  Those are the documents that we have been

12   trying for a while to obtain.  We have had some problems with

13   delay.  We have been trying to obtain a transcript of both

14   proceedings and have been unable to; first of all, because of

15   the fire that was in the courthouse we were told about and

16   then also Monday was a holiday.  Tuesday apparently was a day

17   that was given to many employees because Wednesday was also a

18   holiday with the Inaugural.  So we have had some difficulty in

19   getting some of the documents.

20        I understand Mr. Savage's point and I am not

21   unconcerned by any of this too.  I am concerned that a lot of

22   this wasn't in the computer systems that we searched.  He has

23   a point about notice with respect to sentencing enhancements

24   based on facts, but as the Court indicated, the criminal

25   history is the criminal history.  If it hasn't been computed

20    1    properly, it needs to be computed properly.

2    I am also at a loss that Mr. Savage would complain

3    about surprise when, again, fifteen minutes after the

4    sentencing was scheduled we are handed a copy of a sentencing

5    memo.  I would be more sympathetic if he had given us plenty

6    of notice for his memo and I would be overly sympathetic and

7    probably wouldn't even make the request if we were dealing

8    with factual enhancements under the guidelines for a gun or

9    base offense levels or any of those things.  Again, we are

10    dealing with criminal history that either is or isn't.  And I

11    am not as sympathetic with his complaint at this point.

12    Obviously we are not opposed to a continuation of the

13    proceedings if that's what Mr. Savage would like, but it did

14    just recently come to my attention.

15    THE COURT:  Mr. Savage, I take it you don't want a

16    continuance but on the other hand --

17    MR. SAVAGE:  I am in a position where his mother and

18    family have come up here from North Carolina and at least are

19    waiting to hear the worst.

20    I am reluctant to say, well, you know, let me look

21    into this but I don't know how I can in good conscience --

22    talking about the last minute.  This was not even in the

23    government's mind until the middle of this proceeding.

24    MR. GEISE:  Your Honor, can I have a moment to

25    consult with Mr. Savage?

1          (pause)

2          MR. GEISE:  Your Honor, I have a suggestion.  It's

3    obviously conditional on what the Court ultimately decides.

4    I believe either offense level we are going to recommend the

5    low end.  Criminal history category two is 324 months; history

6    category three, it's 360 months.  It seems to the government

7    that either criminal history, that's an adequate sentence.

8          If the Court is inclined to impose a low-end sentence

9    of either criminal history, it seems the Court can state that

10   for the record without entering the JNC until the parties have

11   had an opportunity to deal with this in writing if necessary.

12   That allows Mr. Reid to be sentenced today.  We can brief to

13   whatever extent is necessary the criminal history.  He can be

14   sentenced while his family is here.  Then the Court can just

15   enter the JNC.  I don't purport to read the Court's mind on

16   that issue but I think that's probably appropriate.

17         THE COURT:  You are reading the Court's mind

18   accurately in terms of the low end of the guidelines in either

19   instance.  The question that I have is the procedure you

20   indicate that I can go ahead and sentence, but I don't know

21   how I can do that until we know where it is.

22         MR. GEISE:  Your Honor, it's not unlike what we did

23   with Mr. Brown last Friday where the Court actually entered

24   an alternate sentence.  I think the Court can indicate on the

25   record that it will enter a sentence at the low end under

1       1    either criminal history two or three.  Criminal history

2    category two, that will be 324 months.  Criminal history

3    category three, that would be 360 months.  The Court will

4    enter a final JNC based on its resolving any written pleadings

5    that we have on criminal history.

6         I don't suggest that because it necessarily seems to

7    be the best way ordinarily, but I know Mr. Reid's family has

8    come from a considerable distance.  I can understand to some

9    degree getting as much of this done as possible.

10        Obviously if Mr. Savage doesn't want to proceed that

11    way I am not pushing it.  But at least it seems to me some

12    element of finality.  Mr. Reid and his family can have some

13    sense of what is occurring and the Court can resolve the

14    remaining issue I think in writing.  I'm not sure that it

15    would be necessary for any argument.  That's obviously the

16    Court's call.  It seems to me that gets as close to finality

17    at this point as we can.

18        There is really one fairly narrow issue of

19    interpretation, of criminal history, and that's at least a

20    suggestion to proceed and at least allow the family and

21    Mr. Reid to have some sense that it's basically complete.

22        THE COURT:  Mr. Savage.

23        MR. SAVAGE:  Let me speak to Mr. Reid please.

24                (pause)

25        Your Honor, under the circumstances I want to make

1

1    at least if I understand what the rationale of the Court is

2    if in fact this is something that is as clear-cut as looking

3    at court files and making a determination on whether in fact

4    the Court files support an elevation in the criminal history.

5    I certainly don't think that I would have much to stand on in

6    saying, you know, we should go forward today and he should be

7    given the benefit of the doubt based upon what we know on that

8    presentence report.  With the understanding of the fact that

9    I wouldn't want to give up any kind of a weak foundation I

10   understand I would have on that particular point.

11       He is willing to go forward, be sentenced,

12   alternatively on the two criminal histories, the two and the

13   three, and then we can provide information to the Court which

14   will basically make -- based more on what the facts truly are

15   rather than the speculation we are going on now.  I have

16   indicated to him that that would be what I would suggest and

17   he is willing to go along with that.

18       THE COURT:  My view is that you wouldn't be waiving

19   anything.  That plus a nickel might get you a cup of coffee.

20       Perhaps before we get to the question of allocution

21   or anything that you may want to say respect to the sentence

22   which may be somewhat academic, on the basis of the findings

23   that I have made thus far, and leaving only the question

24   remaining as to what the appropriate criminal history is

25   based on what has in fact transpired in terms of the prior

1       convictions, the issue boils down to the single question as

2       to whether it's a category two or a category three applied

3       to a level 40.   In other words, a sentence range if it were

4       a category two, of 324 months to 405 months, or a range, if it

5       is a category three, of 360 months to life.

6            As I have already indicated a moment ago but will

7       reiterate clearly for the record, if the determination is

8       ultimately made that the category two is correct, I am of a

9       mind to impose the low end of 324 months.   Similarly, if it is

10      a category three determination, I am of a mind to impose the

11      lowest term of 360 months.

12           The government has indicated its assent to those

13      sentences being appropriate.   In addition to that, there are a

14      number of reasons why in my mind the lower end of the

15      guidelines, in either event, would be appropriate.   Not the

16      least of which being Mr. Reid's overall role with respect to

17      all of the defendants in this particular matter, in addition

18      to all of the usual factors that must be considered.

19           Notwithstanding that, if there is anything that

20      counsel want to say, Mr. Savage, or if Mr. Reid wants to

21      allocute and tell me anything that he wants to tell me, he can

22      certainly do so although it would seem as I say academic.

23           MR. SAVAGE:   I have said everything I want to say,

24      Your Honor.

25           THE COURT:   Mr. Reid, you do have an opportunity to

say anything that you would like to say to me about the
sentence if you want to do that.

THE DEFENDANT:  I would just like to keep it short
and sweet and no more speeches, Your Honor.  Obviously my fate
has already been decided from my probationary report.
Whatever I say will have no bearing, as Mr. Geise put it, you
know, whatever your feelings they are irrelevant, so there is
nothing I can say to make a change.  So with that I am going
to -- that's it.

THE COURT:  Counsel, how much time do you all think
you might need or do you want to devote to resolving this
criminal history question?

MR. SAVAGE:  If in fact Ms. Skalla is able get ahold
of at least copies of the Court files and make them available,
I think that's really going to be the big issue.  And in terms
of what the Court was intending, whether in fact there was an
imposition of a concurrent or consecutive sentence, because I
would think that that would have a change or at least an
arguable change in the application of the guideline.

If he was given a consecutive 90-day term, it seems
as though the issue off the top of my head is pretty clear.
But if it is concurrent I am not so sure it qualifies for the
two point increase.  In any event, that is really the most
important thing I think, how long it will take to get the
files.

2

1        MS. SKALLA:  Your Honor, we have the documents here

2    today if Mr. Savage would like to review them.  I understood

3    that he had been through the D.C. court file and had those

4    documents.

5        MR. SAVAGE:  I didn't go through the file, Your

6    Honor.  I went and got a printout of the docket sheets as well

7    as the sheet that deals with the overall involvement of

8    Mr. Reid in the Superior Court system.  I didn't look at any

9    files.  If Mr. Skozilas has the file, get a copy of the file,

10   I wouldn't need any more than ten days.

11       MS. SKALLA:  We can provide them to Mr. Savage today.

12       THE COURT:  Let's use the ten days that Mr. Savage

13   has suggested.  Of course if you can satisfy yourselves any

14   sooner than that, all the better.  If for some reason you need

15   more time you will let me know.

16       MR. SAVAGE:  Your Honor, the other thing is that

17   at this point my understanding is that today would qualify as

18   the sentencing day, or would we have to wait until the Court

19   had the opportunity to make a ruling on these legal issues and

20   not require his presence?

21       MR. GEISE:  I certainly think he can waive his

22   presence.  The only problem I suppose is whether the Bureau of

23   Prisons will start the process of placing him.  I am sure

24   that's one of Mr. Savage's concerns.

25       I would think that if the Court were to enter a JNC

2  1    today and then if necessary -- I share that concern that at

   2    least the process get going.  The marshals might have a little

   3    better idea how to get the process going, whether the court

   4    can enter a JNC in the alternative today, and then just enter

   5    an amended final JNC when it resolves this issue.  That might

   6    get the process going so Mr. Reid can get placed and all of

   7    that can be done.  That might be the best solution.  Then

   8    obviously Mr. Savage can file his notice of appeal based on

   9    the JNC as filed today and the Court can put a final one in.

  10         MR. SAVAGE:  Your Honor, as a follow-up to what

  11    Mr. Geise is saying, I think that it would be appropriate if

  12    in fact we see this as a possible sentencing mistake, as it

  13    were, under Rule 35, and if the Court were to sentence him to

  14    the high end at this point, 360 months, with the understanding

  15    that I would be able to file a motion for reconsideration of

  16    an improper sentence.  That might solve our other problems.

3 17         MR. GEISE:  I think that's an excellent idea, Your

  18    Honor, and certainly what the rule contemplates.  Even if that

  19    isn't what the rule would contemplate, the government would

  20    place it on the record that it would have no objection to

  21    proceeding to enter the order on the 360 today under Rule 35,

  22    amending it, no objection from the government if the Court

  23    determines that the offense level is different -- criminal

  24    history is different.

  25         THE COURT:  I think that does make sense.  I am

3

1    going to indicate for the record my determination today on

2    what has been presented to me, that category three is the

3    appropriate category, although that will be subject to attack

4    if Mr. Savage is able to come up with whatever is sufficient

5    to convince me that that is an incorrect conclusion.

6        With that tentative conclusion, the sentence will be

7    360 months, low end of the guidelines under category three.

8    Mr. Reid is committed to the Bureau of Prisons for a term of

9    360 months.

10        There are the additional questions with respect

11    to -- I don't know whether counsel want to speak to what's in

12    the presentence report or otherwise in terms of supervised

13    release.  They seem to be somewhat superfluous.  Anything you

14    want to say about that?

15        MR. SAVAGE:  No, Your Honor.

16        THE COURT:  There may also be a question here because

17    we did not get to the question about the statutory minimum

18    that's applicable.  The government's position with respect to

19    that is that -- where are we with the statutory minimum?

20        MS. SKALLA:  Your Honor, under either theory, that

21    the count involved powder or the count involved crack, that

22    there is a ten-year minimum mandatory sentence which would

23    carry a five-year term of supervised release.

24        MR. SAVAGE:  Your Honor, I think if the Court is

25    referring to the prior conviction -- I don't know whether you

3   1   are or not -- it seems to me no matter what --

2        THE COURT:  We are not talking about a doubling?

3        MS. SKALLA:  No, sir.  No, sir.  Simply under the

4   offense, the quantity of drugs involved in Count 35.

5        THE COURT:  It's really a moot issue then it seems to

6   me.

7        MS. SKALLA:  It appears to be that way, Your Honor.

8        THE COURT:  Ten years is appropriate.  Given the

9   ultimate determination as to the guidelines it is a moot

10   issue.  Of course there is the special assessment of fifty

11   dollars.

12        The terms of supervised release.  I believe there is

13   a minimum of five years in this circumstance.  So a term of

14   five years supervised release will be applicable.  The

15   standard conditions that appear on the judgment form and those

16   that are suggested in the presentence report, that Mr. Reid

17   commit no further crimes, federal, state or local, and not

18   possess any illegal drugs.

19        Mr. Reid, you understand that you do have a right of

20   appeal and that has to be exercised within ten days time.  You

21   are entitled along with that to whatever records and

22   transcripts are necessary if you are unable to afford those.

23        Mr. Savage, I am sure, will be glad to discuss any

24   further details regarding that appeal with you.

25        THE DEFENDANT:  Yes, Your Honor, I understand.

3

1          THE COURT:  Anything else for the record at this

2    point?

3          MS. SKALLA:  No, sir.

4          MR. SAVAGE:  No, Your Honor.

5          (Thereupon, the sentencing hearing concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25